UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
R.B. DEVELOPMENT, CO., LTD.,

              Plaintiff,

   -against-

TUTIS CAPITAL LLC, METROPOLITAN
FINANCIAL HOLDINGS, LTD., THE LAW
FIRM OF BRYANT SAUNDERS, PLLC,
LACEE INTERNATIONAL INC., ANDRE
VILLEROY, THOMAS A. LAWSON, GOLDIE
DICKEY, TA-LETTA SAUNDERS, DIANE L.
TURNER, JOHN DOES 1-10, and XYZ
CORPORATIONS 1-10,

              Defendants.
------------------------------------------------------------------x

**NOT FOR PUBLICATION**
**MEMORANDUM & ORDER**
12-CV-1460 (CBA) (SMG)

AMON, Chief United States District Judge:

      The plaintiff, R.B Development ("R.B."), has moved ex parte for a Temporary Restraining Order, pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, to freeze all the bank accounts belonging to defendants Lacee International, Inc. ("Lacee"), Diane Turner, and Andre Villeroy. For the reasons stated below, the motion is denied.

**I.    BACKGROUND**

      This case arises out of R.B.'s allegation that it was induced by defendants Tutis Capital and Thomas Lawson to invest in a fraudulent funding scheme, in which R.B. was deprived of $1.4 million dollars. R.B. alleges that it entered into a Collateral Management Agreement with Tutis and its managing partner Lawson, pursuant to which Tutis promised to facilitate an asset-backed non-recourse loan to R.B. in the amount of $130 million, for the purpose of funding property that R.B. was developing in Korea. Pursuant to this agreement and an Escrow Agreement with TitleVest Services LLC, R.B. transferred $1.4 million to TitleVest to be held in

1

escrow until a lender was secured—this amount representing around 10% of the Collateralization Fee that R.B. was obligated to provide to the lender under its agreement with Tutis.

Once this $1.4 million was placed in escrow, Tutis obtained an "Irrevocable Funding Commitment" from Metropolitan Financial Holdings, Ltd. ("MFH"), the purported lending bank for the loan, stating that MFH would arrange for the loan funds to be transferred to Tutis (and thereafter R.B.) upon receipt of the $1.4 million in escrow funds. This letter indicated that MFH was acting "for and in behalf of [its] client Lacee International Inc. c/o Ms. Diane Turner." (Chun Aff., Ex. D.) R.B. claims that Lawson repeatedly represented that MFH was a well-established bank that would act as a reliable funding source. Thus, upon receipt of MFH's Funding Commitment, R.B. authorized TitleVest to release the $1.4 million from escrow to the account designated by MFH, a Royal Bank of Canada account ending in -9208 (the "RBC 9208 account").

R.B. later discovered that this RBC account was in fact an attorney trust account, held in the name of the "Law Firm of Bryant Saunders, PLLC" for the benefit of "Metropolitan Financial Holdings," with Ta-letta Saunders named as trust attorney. Ms. Saunders has submitted an affidavit indicating that she "served as an escrow agent under contract by and between Tony Lawson of Tutis Capital and Andre Villeroy of Elipse Mondern[,] whereby Tutis Capital contracted with Elipse Modern to secure a non-recourse loan for the benefit and use of Tutis Capital's client RB Development." (Chun Aff., Ex. GG.) R.B. claims that it had no knowledge of the true ownership of the RBC 9208 account, or of the involvement of Saunders or Villeroy in the transaction.

According to R.B., after a series of delays during which Lawson indicated that the loan funds would soon be forthcoming, R.B. notified Lawson that it was exercising its right to

2

terminate the agreement and receive back its $1.4 million deposit. (See Chun Aff., Ex. A ¶ 18.) However, the funds were never returned. Instead, R.B. claims that the funds were dispersed among the defendants through a series of wire transfers involving the RBC 9208 account, and accounts held by Lacee, Turner, Villeroy, and other persons and entities.

On March 22, 2012, R.B. filed suit against the captioned defendants, bringing a panoply of claims, including civil RICO conspiracy, fraud, breach of contract, conversion, and unjust enrichment. Since filing the complaint, R.B. has voluntarily withdrawn its claims against defendants MFH, Goldie Dickey, Law Offices of Bryant Saunders, and Ta-Letta Saunders. Tutis and Lawson have appeared in the action through counsel, and have requested a pre-motion conference to discuss an anticipated motion to dismiss most of the claims against them. Lacee, Turner, and Villeroy have not yet appeared in the action. It appears that the Summons and Complaint have been mailed to Turner and Villeroy's last known addresses (docket entries #13 and #14), but that their actual residences have not yet been located for personal service. (Chun Aff. ¶ 43, Exs. Y, Z.) R.B. attempted to serve Lacee at a listed address, but found the unit vacant. (Chun Aff. ¶ 43, Ex. AA.) Lacee has since posted the summons and complaint at the vacant address, and mailed a copy via first class mail. (Docket entry #18.)

In the instant motion, R.B. seeks to have frozen three accounts held by Lacee, as well as accounts held by Cherizar Carlisle, David Caldwell, and Chauncy Billeroy, LLC, all three of which R.B. appears to believe are related to Andre Villeroy (although proof of this connection is largely absent from R.B.'s submissions). R.B. also asks this Court to order defendants Villeroy and Turner "to maintain and preserve all other personal and corporate bank accounts and the balances therein over which they have control, access, and/or manage."

## II. DISCUSSION

R.B. has styled its motion as one for a Temporary Restraining Order pursuant to Rule 65(b)(1) of the Federal Rules of Civil Procedure. R.B.'s submissions, however, are wholly insufficient to persuade the Court that R.B. is entitled to such extraordinary relief.

As an initial matter, R.B. has made no showing that the Court has jurisdiction over the property at issue. Indeed, R.B.'s papers do not clearly identify where the bank accounts at issue are located, although they appear to be outside of New York. Moreover, R.B. has not attempted to demonstrate how this Court will eventually obtain jurisdiction over the defendants at issue: it appears from the current record that R.B. has been repeatedly unable to serve Lacee, Turner, or Villeroy pursuant to Rule 4 of the Federal Rules of Civil Procedure, and R.B. omits any explanation of how those defendants have sufficient contacts with New York to be subject to this Court's jurisdiction. Finally, the Court notes that the very brief proposed TRO submitted by R.B. for this Court's signature makes no mention of posting a bond, as required by Rule 65(c), and provides no explanation of how the proposed Order would be executed, or how the defendants would be eventually provided with notice and an opportunity to be heard regarding the seizure of their property, pursuant to Rule 65(b)(3).

Even assuming that R.B. could overcome these obstacles, its motion suffers from a more central defect. The Supreme Court has squarely held that a federal court lacks the power, pursuant to Rule 65 and its general equity jurisdiction, to issue injunctions freezing a defendant's assets in order to ensure their availability for a future judgment of money damages. <u>Grupo Mexicano de Desarollo S.A. v. Allliance Bond Fund, Inc.</u>, 527 U.S. 308, 333 (1999); <u>see also</u> <u>Republic of Phillipines v. Marcos</u>, 806 F.2d 344, 356 (2d Cir. 1986); <u>Sequa Corp. v. Gelmin</u>, 1995 WL 404726, at *6 (S.D.N.Y. 1995). In contrast, where the plaintiff can demonstrate an

equitable interest in <u>particular property</u>, the court may in certain circumstances enter an injunction freezing those assets for the pendency of the litigation. See <u>Grupo Mexicano</u>, 527 U.S. at 324-26; <u>Marcos</u>, 806 F.2d at 355 (injunction preventing transfer of properties warranted "based on a claim for imposition of a constructive trust or an equitable lien"); <u>Quantum Corp. Funding, Ltd. v. Assist You Home Health Care Servs. of VA</u>, 144 F. Supp. 2d 241, 249 (S.D.N.Y. 2001) ("The issue in <u>Grupo Mexicano</u>, as other courts have recognized, was whether a district court has the power to enjoin assets in which the potential judgment creditor has absolutely no equitable interest.").

However, R.B.'s submissions do not demonstrate such an equitable interest in the funds it seeks to have frozen here. Claims for a constructive trust or equitable lien typically lie "where money or property identified as belonging in good conscience to the plaintiff [can] clearly be traced to particular funds or property in the defendant's possession." <u>Great-West Life & Annuity Ins. Co. v. Knudson</u>, 534 U.S. 204, 213 (2002). "[W]here 'the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor,' and the plaintiff 'cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant].'" <u>Id.</u> (quoting Restatement of Restitution § 215, Comment a, at 867 (1936)).

Although R.B.'s complaint does bring a claim against all the defendants for unjust enrichment and restitution of the $1.4 million Collateralization Fee, it is clear that the $1.4 million has now dissipated among various accounts, only some of which are held in the names of current defendants to this suit. It thus does not appear at this juncture that R.B. has adequately identified particular funds in the defendants' possession to which it has an equitable claim—or that it even seeks to do so. Indeed, R.B.'s counsel concedes that the various monetary transfers

"frustrate the traceability" of the funds. (Lim Aff. ¶ 16.) At most, R.B.'s papers show its $1.4 million moving into the RBC 9802 account along with several other deposits, followed by several transfers out of the RBC 9802 account to the defendants and others. (See Chun Aff., Ex. U.) It is not at all clear to the Court what additional monies were kept in the RBC 9802 account, or are currently kept in the defendants' bank accounts.

In any event, it is clear that, even if R.B. could show an equitable interest in some funds that are now located in the bank accounts it seeks to have frozen, it certainly would not have an equitable claim to every dollar in the possession of Lacee, Turner, and Villeroy, which is what the proposed order covers. Because R.B. has made no attempt to posit an equitable interest that corresponds to the breadth of the TRO it proposes, the Court can only conclude that R.B. is simply seeking to ensure that funds will be generally available for some future judgment imposing personal monetary liability on the defendants in a now-undetermined amount. Grupo Mexicano teaches that the Court is without the power to issue such an order, and R.B.'s papers offer no arguments to detract from that conclusion. See also JSC Foreign Econmic Ass'n Technostroyexport v. International Development and Trade Services, Inc., 295 F. Supp. 2d 366, 389 (S.D.N.Y. 2003) ("[B]ecause the plaintiff asserts no lien or equitable interest in the assets it seeks to restrain, this Court lacks the power to grant the preliminary injunction it seeks.")

### III. CONCLUSION

R.B.'s ex parte application for an order freezing certain bank accounts is denied. R.B. is further directed to show cause within seven (7) days from the date of this Order why its TRO application materials should not be filed on the public docket.

SO ORDERED.

                                                           /s/  
                                        Carol Bagley Amon  
                                        Chief United States District Judge

Dated: Brooklyn, New York  
       June 20, 2012